An appropriate Order will enter.

**Joseph BAGNALL, Plaintiff,**

**v.**

**FREEMAN DECORATING COMPANY,**
**Defendant.**

**No. 00 C 1922.**

United States District Court,
N.D. Illinois,
Eastern Division.

July 21, 2000.

Fern N. Trevino, Law Office of Fern N. Trevino, Chicago, IL, for plaintiff.

Richard H. Lucy, Dowd & Dowd, Ltd., Chicago, IL, for defendant.

### *ORDER*

ROSEMOND, United States Magistrate Judge.

Before the Court is *"Defendant's Motion To Strike Plaintiff's Objections To Defendant's Interrogatories And Production Re-*

*quest.*" The motion is essentially a motion to compel, and as such, is granted in part and denied in part.[1]

By way of background, we note the following. Plaintiff Joseph Bagnall worked for the defendant for over 30 years as a "rigger" or in rigger related positions such as rigger foreman. It appears undisputed that the position of "rigger" is a high-injury job. Plaintiff was injured on the job, and after a hard-fought, eight year litigation against the defendant was victorious in his Workers Compensation claims against the defendant.

At the time of his Workers Compensation proceedings against the defendant, the plaintiff was on "*temporary permanent disability* " status. In 1998, his physicians released him for work, but with certain lifting and pulling restrictions. Not wishing to accommodate his no heavy lifting restrictions, the defendant refused to rehire him.

The *First Amended Complaint* herein charges the defendant with disability discrimination in violation of the Americans With Disabilities Act. The complaint also includes a pendant state law claim for retaliatory discharge in violation of the Illinois Workers' Compensation Act.

The case is presently in the discovery stage. A discovery impasse has occurred regarding several of defendant's interrogatories and document requests. We resolve the matter as follows:

■ **1. *Interrogatory No. 18*** asks the plaintiff if he has "ever filed a claim for Social Security Disability Insurance," and, if "yes," to answer four additional questions relating thereto.[2] Plaintiff objected to the interrogatory on relevancy grounds, and harassment.

Apparently, it is undisputed that at all times relevant during the pendency of plaintiff's Worker's Compensation claims against the defendant, the plaintiff was on *temporary permanent disability* status. At some point in time, his physicians released him for work with certain restrictions, *to-wit:* no heavy lifting or pulling. According to his attorney, the defendant was unable to find work during the pendency of his Worker's Compensation claims, because he was in effect constructively blacklisted. Plaintiff's counsel charges that no one would hire the plaintiff until his Worker's Compensation claims were resolved.

■ In any event, during the period of time when the plaintiff was admittedly and apparently undisputedly on *temporary permanent disability* status, he could consistent with a medically determined diagnosis of *temporary permanent disability* receive Social Security Disability Insurance benefits.[3] This is so, because there are many situations in which a Social Security benefits claim and an Americans With Disabilities Act claim can comfortably exist side by side.[4] As noted by the United States Court of Appeals for the Seventh Circuit in *Feldman v. American Memorial Life Insurance,* 196 F.3d 783 (1999), "the severity of a disability may change over time such that an individual was totally disabled when she [or he] applied for SSDI [Social Security Disability Insurance], then later was a qualified individual at the time of the employment decision disputed in an ADA [American With Disabilities Act] suit. Even though the underlying disability is the same, the SSDI application and the ADA suit might reference quite different points in time between which an improvement or deterioration in the plaintiff's disability may have transpired."[5] Such is the

---

1. In open court, defendant withdrew from the Court's consideration Interrogatory No. 19. On the day before the motion was heard, plaintiff supplemented, in major part, his answer to Interrogatory 19. He represented in open court that he anticipates completing the update soon.

2. *Defendant's Exhibit B,* at 13, *"Defendant's Motion To Strike Plaintiff's Objections TO Defendant's Interrogatories And Production Request."*

3. The Social Security Disability Insurance program provides benefits to a person with a disability so severe that he is unable to do his previous work or any other kind of substantial gainful work. *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999).

4. *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 119 S.Ct. 1597 (1999).

5. *Feldman,* 196 F.3d at 790.

case here, where the plaintiff was permanently disabled at one point in time and, thereafter, following his physician's release for work and his successful completion of the Social Security statutorily required trial work period while still under the permanently disabled status, his status changed from permanently disabled to partially disabled or better. Finally, in this regard, it must be remembered that,

> if an individual has merely applied for, but has not been awarded, SSDI benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system. Our ordinary rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to "set forth two or more statements of a claim or defense alternately or hypothetically," and to "state as many separate claims or defenses as the party has regardless of consistency."[6]

Thus, it is not relevant whether the plaintiff ever filed for Social Security Disability Insurance benefits. The matter only becomes relevant if he was *awarded* any such benefits. However, with respect to the *instant* case, the matter is only relevant for the time period subsequent to the Social Security's statutory trial work period following the plaintiff's release for work. Only when the plaintiff's physicians released him for work did his status of *temporary permanent disability* change. To seek discovery prior to this date is harassment. We agree with plaintiff's counsel that *via* Interrogatory No. 18 the defendant is improperly endeavoring to re-litigate the validity of plaintiff's Worker's Compensation claims. However, for *Feldman* purposes, if after being released from *temporary permanent disability* status, the plaintiff filed for *and was awarded* SSDI benefits, then such application papers must be produced to the defendant. In addition, if the plaintiff was receiving SSDI benefits for a Social Security Act disability, and shortly after being released from his *temporary permanent disability* status, and following the Social Security statutorily permitted trial work period, the plaintiff made no effort to change, modify, or discontinue his SSDI benefits, then the SSDI application outstanding at the time must be produced.

■ *2. Interrogatory Nos. 11 and 12* basically seek the identity of any workers compensation claims filed by the plaintiff. The interrogatories are overly broad in scope and time. *Accordingly, plaintiff's objections thereto are sustained.* Our ruling with respect to Interrogatory 18 above shall also stand as our ruling for Interrogatory Nos. 11 and 12. Accordingly, only if the plaintiff received Worker's Compensation benefits subsequent to February of 1998, need he respond to these interrogatories. However, to put an end to the matter, as well as the distrust of counsel, we direct the plaintiff to state, should it be the case, that he received no such benefits after February of 1998. If he did, he must produce documents subsequent to February 1998—the month of his release from *temporary permanent disability* status—through to the date of the filing of the complaint.

■ *3. A–1 Advance Document Request.* Defendant's supplemental document request seeking production of any and all records concerning a trade show display company called A–1 Advance Display is pure harassment. The plaintiff's May 13, 1991 deposition testimony reveals that the company was liquidated by the plaintiff in 1990.

■ In any event, contrary to the defendant's assertions, to prevail on his ADA claim, the plaintiff need not show that he is disabled from a broad range of occupations. Under *Feldman*, to establish a *prima facie* case for failure to accommodate under the ADA, a plaintiff must show that

(1) [he] was or is disabled;

(2) [Freeman Decorating] was aware of [his] disability, and

(3) [he] is a qualified individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that [he] held with [Freeman Decorating].[7]

---

**6.** *Cleveland,* 526 U.S. at 805, 119 S.Ct. 1597.

**7.** *Feldman,* 196 F.3d at 789.

■ Further, we note that contrary to the defendant's assertions, the discovery of whether the plaintiff receives money from a company in the form of stocks, bonds, dividends, or profits as an owner or part owner of a business, does not go to the issue of mitigation of damages. If the plaintiff did not receive monetary benefits that he otherwise was entitled to receive, *but for* the unlawful discrimination of the defendant, the fact that he had other sources of income outstanding at the time or even now does not reduce the money damages due and owing to him by the defendant. The only way that the damages owed by the defendant are cutoff or lessened is if, after being discharged by the defendant, the plaintiff took a position with an employer who paid the defendant more than he would have made in the defendant's employ, or if the plaintiff made no effort to find comparable and suitable employment, that is, no effort to mitigate his damages. The discovery sought by Interrogatory Nos. 11 and 12 is irrelevant to either of the above scenarios. *Accordingly, the plaintiff's objections are sustained.*

■ 4. Defendant has failed to demonstrate the relevancy of discovery requests seeking the number of hours worked by the plaintiff in 1989 and 1990. This request also smacks of harassment. *Plaintiff's objections are therefore sustained.*

■ 5. Defendant has also sought discovery of the plaintiff's tax returns for the years 1993 through the present. The request is harassment. Even under the defendant's theories, the only arguably relevant time period would be 1998 and 1999 and, perhaps, 2000. In any event, we find that the defendant has failed to demonstrate the relevancy of any tax returns. Moreover, the plaintiff is willing to produce any and all relevant W–2's and 1099's. Defendant makes no effort to show the insufficiency of this document production.

*According, it is adjudged, decreed and ordered:*

1. *"Defendant's Motion To Strike Plaintiff's Objections To Defendant's Interrogatories And Production Request"* is hereby denied.

2. Plaintiff's objections to the Interrogatories discussed in this *Order* are hereby sustained. However, where directed to do so herein, plaintiff must supplement his responses as directed, by August 7, 2000.

3. No party may file any additional interrogatories or document requests without first obtaining leave of court to do so. The one exception shall be documents learned of for the first time at a deposition.

4. Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the parties must file their objections to the Order with Honorable Robert W. Gettleman within ten (10) days after being served with a copy of the Order. Failure to file objections within the specified time period waives the right to appeal the Magistrate Judge's Order.

*So Ordered.*